*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. A. BURNS, Minor.

UNPUBLISHED
December 16, 2025
2:50 PM

No. 375685
Montcalm Circuit Court
Family Division
LC No. 2021-001023-NA

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

Following remand for a best-interest hearing, respondent-father appeals by right the trial court's order terminating his parental rights to the minor child, GAB, under MCL 712A.19b(3)(a)(*ii*) (desertion) and (h) (parental imprisonment depriving the child of a normal home for more than two years).[1] On appeal, respondent-father argues that the trial court erred by finding that termination was in GAB's best interests. We affirm.

## I. BACKGROUND

Because this is defendant's second appeal, the following facts are adopted from this Court's unpublished opinion on respondent-father's first appeal:

The trial court first acquired jurisdiction over GAB after the Department of Health and Human Services (DHHS) petitioned for child protective proceedings, alleging that respondent-mother's one-month-old child died in her custody.[3] Because of the unknown cause of the child's death and respondent-mother's

---

[1] As a panel of this Court previously identified: "At the termination hearing, the trial court erroneously identified MCL 712A.19b(3)(b) as one of the grounds for termination. That appears to be a misstatement or typographical error. Petitioner sought termination under MCL 712A.19b(3)(a)(*ii*) and (h), and it is clear from the record that the trial court found statutory grounds to terminate under those subsections." *In re GA Burns, Minor*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2025 (Docket No. 372453), p 1 n 1.

substance use, DHHS requested that the trial court authorize the petition, place GAB in DHHS's care, and exercise jurisdiction. The trial court granted DHHS's request and placed GAB with respondent-mother's relatives. At the preliminary hearing on the petition against respondent-mother, the trial court found that there was probable cause that respondent-father was GAB's putative father. The trial court provided respondent-father with a putative-father notice, ordered a DNA test, and conducted a putative-father hearing. Respondent-father acknowledged that he was GAB's father, and the trial court appointed an attorney to help respondent-father establish paternity.

While the trial court proceeded with respondent-mother's case, respondent-father failed to establish paternity. In May 2024, the Montcalm Family Court entered an order of filiation establishing respondent-father as GAB's legally-acknowledged father. Petitioner then filed a petition to terminate respondent-father's parental rights, alleging that he had a significant criminal history, did not establish paternity after being given an opportunity to do so, failed to support GAB in any manner, and was incarcerated with an earliest release date of July 2027.

The trial court authorized the petition and subsequently held a combined adjudication and disposition trial. At the conclusion of the trial, the court took jurisdiction over GAB pursuant to MCL 712A.2(b)(1) (failure to provide proper care or custody) and (2) (unfit home environment). The court found statutory grounds to terminate respondent-father's parental rights under MCL 712A.19b(3)(a)(*ii*) and (h) and determined that termination was in the best interests of the child.

---

[3] Respondent-father was not the legal or putative father of the child who died in respondent-mother's care. Although the trial court also terminated respondent-mother's parental rights to GAB, she is not a party to this appeal.

---

[*In re GA Burns, Minor*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2025 (Docket No. 372453), p 2.]

Respondent-father appealed. A panel of this Court affirmed the trial court's findings as to the statutory grounds for termination. But because "the trial court did not explicitly address GAB's placement with respondent-mother's relatives when considering whether termination was in his best interests," the panel remanded the case "for further consideration of the child's best interests in light of his relative placement." *Id*. at 4.

Following the panel's directive, the trial court held a best-interest hearing and made additional findings. The trial court began by discussing GAB's placement history. The trial court noted that GAB was removed from his respondent-mother's custody in 2021 and then placed with respondent-mother's third cousins. At that time, respondent-father was not the legal father and had not taken any steps to establish paternity. In 2022, GAB returned to respondent-mother before

-2-

being removed again. GAB was placed with respondent-mother's third cousins once again, and has remained there ever since. The trial court observed that the only family that GAB identified with was his placement family. A psychological evaluation showed that GAB identified his placement family as his real parents. GAB told the psychologist that his real "mom" and "dad" were in the waiting room, and the psychologist later learned that these were GAB's current legal guardians. The evaluation also revealed that GAB had lived with his current placement through a substantive portion of his early development, had formed a strong and genuine bond with them, and feared that he might not be able to stay with them. The psychologist warned that removing GAB from this placement could cause long-term emotional harm. In reviewing GAB's relationship with his current placement, the trial court found love, affection, and a genuine bond, noting that GAB viewed respondent-mother's cousins as his real parents. The court concluded that GAB needed permanence, stability, and comfort, which respondent-father could not provide because GAB did not know him and he would remain incarcerated until at least July 2027.

The trial court further explained that it had gone to great lengths in its termination order to describe the efforts made to establish respondent-father as GAB's legal father while the case was still in the pretermination stage. It emphasized that respondent-father made no effort, even after receiving appointed counsel at county expense. The trial court ultimately found that terminating respondent-father's parental rights was in GAB's best interests, despite GAB's placement with relatives.

This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

## III. ANALYSIS

Respondent-father argues that the trial court clearly erred in its best-interest determination because he expressed willingness to participate in services while incarcerated[2] and believed that he could rebuild a relationship with GAB after being released from incarceration.

---

[2] This Court previously affirmed the trial court's order terminating respondent-father's parental rights to GAB under MCL 712A.19b(3)(a)(ii) and (h), which included the trial court's finding that petitioner made reasonable efforts to reunify respondent-father and the child. *In re GA Burns*, unpub op at 3. This Court's remand was limited to "further consideration of the child's best

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The focus at the best-interest stage is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[A]t the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *Id.* at 89.

The trial court should weigh all the evidence available to determine the child's best interests. *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). Other considerations include the length of time the child was in foster care or placed with relatives, whether it is likely that a child could be returned to the parent's home "within the foreseeable future, if at all[,]" and whether the parent can provide a permanent, safe, and stable home. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered . . . ." *In re Olive/Metts*, 297 Mich App at 43. A trial court may also consider the expert testimony of witnesses like psychologists, therapists, and caseworkers. *In re Conley*, 216 Mich App 41, 44; 549 NW2d 353 (1996).

A preponderance of the evidence in the records supports that GAB did not know respondent-father, identified with his current placement as his family, and looked to them for love, affection, and guidance. See *In re Moss*, 301 Mich App at 87. GAB has lived with his current placement for a substantial portion of his early development, formed a genuine bond with them, and expressed fear about being removed from their care. Respondent-father has been incarcerated nearly all of GAB's life, had minimal contact with him, has not provided any continuity of care, and has no meaningful bond with GAB. Although respondent-father expressed a willingness to engage in services and rebuild the relationship after release, the trial court found that GAB required permeance, stability, and long-term security, which respondent-father could not provide within a reasonable time.

GAB has a secure, loving bond with his current placement. The psychological evaluation described GAB as strongly attached to, and genuinely connected with, his current placement, whom he identified as "mom" and "dad." GAB's placement provides consistent emotional and

---

interests in light of his relative placement." *Id.* at 4. To the extent that respondent-father is now arguing that he was not offered any services, that issue is barred by the law-of-the-case doctrine. See *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021) (explaining that under the law-of-the-case doctrine, "if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same") (cleaned up).

developmental support for him. At the time of the best-interest hearing, GAB was six years old and had very little contact with respondent-father. The trial court properly considered the duration of GAB's placement with relatives and found that he could not be placed with respondent-father within the foreseeable future, as respondent-father will remain incarcerated until at least July 2027. See *In re Frey*, 297 Mich App at 248-249.

The record further supports the finding that respondent-father failed to seek custody or establish paternity until GAB was five years old, despite acknowledging GAB as his son as early as 2021. Two DHHS caseworkers testified that they made several attempts over the years to contact respondent-father during his incarceration, and respondent-father did not avail himself of court-appointed counsel despite assistance offered. Although "[i]ncarceration alone is not a sufficient reason for termination of parental rights," *In re Mason*, 486 Mich 142, 146; 782 NW2d 747 (2010), respondent-father's earliest release date is mid-2027, when GAB will be eight years old. We are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent-father's parental rights was in GAB's best interests.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace